380 So.2d 137 (1979)
James N. SHEETS
v.
Clayton ROBIN d/b/a Bluff Acres Ranch.
No. 12938.
Court of Appeal of Louisiana, First Circuit.
December 27, 1979.
Victor L. Marcello, Donaldsonville, for plaintiff and appellee.
Stacey A. Moak, Baton Rouge, for defendant and appellant.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
This is a suit in which plaintiff James N. Sheets seeks damages from defendant Clayton Robin, doing business as Bluff Acres Ranch, for injuries received by plaintiff's paint mare, Sunday Too, while in defendant's custody. After trial on the merits, judgment was rendered in favor of plaintiff, and defendant has appealed.
Since the parties hereto, in brief, argue a number of alternative legal theories for the case, since there are serious factual disputes, and since the trial judge did not render written reasons for judgment, we are unable to tell what findings of fact and law he might have made. We will therefore make our own factual and legal findings.
Plaintiff purchased Sunday Too in April, 1975, for $4,500.00, intending to use her as a show horse. During the time he owned her, she was being trained and ridden by various handlers, and she won some awards in local open shows. Shortly before the events leading up to this lawsuit, plaintiff attempted to sell the mare by advertising in a trade journal and at a national paint horse auction. He testified that the best offer he received through the ad was $4,100.00. At the auction, the highest bid was $1,750.00 and he withdrew her from the sale. It was then that he decided to breed Sunday Too.
Plaintiff testified that he first discussed breeding his mare to defendant's stallion, High Tone, at a Sheriff's Posse meeting, and later again discussed the matter with defendant on the telephone. According to plaintiff, he made it clear that he did not want Sunday Too injured, and that he was assured by defendant that she would be *138 "halter bred," not allowed to run free in the pasture with High Tone, and would be fully supervised at all times.
According to defendant, he told plaintiff that he only "pasture bred" on his farm, and that plaintiff was aware that Sunday Too would be allowed to run free in the pasture with High Tone and other brood mares as well.
Sunday Too was left at defendant's farm for breeding in March, 1977. After she had been there for some time, it was noticed one morning that she had some bruises and a swollen eye. She was treated for the bruises by defendant, but did not receive the attention of a veterinarian. No one could testify as to how these injuries were received.
On May 7, 1977, Mr. Sheets picked up Sunday Too from defendant's farm. At that time he testified that she was limping, and that there was something wrong with her left eye. An examination by a veterinarian revealed that she was blind in the eye, and that she was suffering from a motor nerve injury which led to a condition called "sweeney." These injuries rendered her unfit to be a show horse. There was a difference of opinion among the veterinarians who saw her as to whether she could have functioned as a brood mare, and as to the prognosis for her recovery from the shoulder injury.
Expert testimony in the record, which is uncontradicted, indicates that, unless there is an agreement to the contrary, the method of breeding is usually at the option of the owner of the stallion, and that the owner of the mare accepts the risk of injury by the stallion or by other mares while the mare is at the stud farm.
Both parties to the case argue that the applicable law is the law of deposit, and plaintiff also argues that Articles 2317 and 2321 require that defendant be held strictly liable. We do not find either of these theories of law to be dispositive of the case. We find the case to be governed by the agreement between the parties and the law applicable thereto.
There is, of course, hopeless conflict between the testimony of the parties as to the specific agreement reached. Plaintiff was of the opinion that he was taking no risk at all that his horse would be injured. Defendant was of the opinion that plaintiff was assuming all risks associated with pasture breeding.
We find defendant's testimony to be more believable. It is clear from the record that no knowledgeable breeder of horses would guarantee the safety of a mare from the kinds of injuries received by Sunday Too. It is not contended that Mr. Robin was not knowledgeable. It is uncontradicted that Mr. Robin was running a pasture breeding operation, in which mares are left in a pasture with the stallion, and with other mares, and an agreement such as that claimed by plaintiff would be inconsistent with his operation. Finally, there are a number of inconsistencies in plaintiff's testimony, whereas defendant's evidence is entirely consistent and in line with the customs followed in horse breeding.
At best, plaintiff may have shown that there was no meeting of the minds as to the particulars of the breeding contract. In such a situation, the provisions of Articles 1964 and 1966 of the Civil Code are peculiarly applicable:
"Art. 1964. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources."

* * * * * *
"Art. 1966. By the word usage mentioned in the preceding articles, is meant that which is generally practiced in affairs of the same nature with that which forms the subject of the contract."
As pointed out above, the custom among those entering into breeding contracts is that the risk of injury to a mare is on the owner thereof, in this case, the plaintiff. Defendant, under the circumstances which we have found to exist herein, can not be held responsible.
*139 The judgment appealed from is therefore reversed and set aside, and there will be judgment herein dismissing plaintiff's case, at his cost.
REVERSED AND RENDERED.